IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**LORRAINE SALAZAR,**

      **Plaintiff,**

vs.                                                         No. CIV 02-0340 WDS

**JO ANNE B. BARNHART, Commissioner**
of the Social Security Administration,

      **Defendant.**

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse and/or Remand for a Rehearing filed on January 23, 2003. Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security, who determined that Plaintiff was not eligible for supplemental security income. The Court, having considered Plaintiff's Motion **[docket # 14]** and Memorandum Brief **[docket # 15],** Defendant's Response **[docket # 19],** the administrative record and applicable law, finds that Plaintiff's Motion should be **DENIED,** and that this matter should be dismissed with prejudice.

### I. Procedural Background

Plaintiff, who was born on November 19, 1954, **Tr. 22,** filed an initial application for supplemental security income ("SSI") under Title XVI of the Social Security Act with a protective filing date of December 10, 1998. **Tr. 68, 69-72.** Plaintiff alleged that she became unable to work as a result of her disabling conditions on September 23, 1998. **Tr. 69.** Plaintiff's application for benefits was denied at the initial level on March 31, 1999, **Tr. 52-55,** and at the reconsideration level on September 24, 1999, **Tr. 58-60.** Plaintiff appealed by filing a request for hearing by an

administrative law judge ("ALJ") on October 8, 1999. **Tr. 61-62.**

The hearing before the ALJ was held on September 12, 2000, at which Plaintiff appeared and was represented by a non-attorney. **Tr. 19-49.** Plaintiff alleged that she was disabled as a result of rheumatoid arthritis, chronic back pain, carpal tunnel syndrome, a fractured knee, and depression. **Tr. 10.** In a decision dated April 10, 2001, ALJ Richard J. Smith denied Plaintiff's claims for SSI. **Tr. 9-13.** Plaintiff then filed a request for review with the Appeals Council on May 25, 2001. **Tr. 5.** The Appeals Council denied Plaintiff's request for review on January 23, 2002, **Tr. 3-4,** and thereby rendered the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). *See* 20 C.F.R. § 416.1481.

On March 25, 2002, Plaintiff, who is now represented by an attorney, filed this action for judicial review pursuant to 42 U.S.C. § 1383(c)(3). The parties have consented to the undersigned United States Magistrate Judge conducting all proceedings, and this case was reassigned to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

## II.  Standard of Review

This Court may only review the Commissioner's decision to determine whether it is supported by substantial evidence and whether correct legal standards were applied. *Andrade v. Secretary of Health & Human Servs.,* 985 F.2d 1045, 1047 (10th Cir. 1993). In determining whether the Commissioner's findings are supported by substantial evidence, the Court should not re-weigh the evidence, nor should it substitute its judgment for that of the Commissioner. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994). Instead, the Court should meticulously examine the record to determine whether the Commissioner's decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen,* 844 F.2d

748, 750 (10th Cir. 1993). The "substantial evidence" standard is satisfied by more than a scintilla, but less than a preponderance, of evidence. *Id.* However, evidence is not substantial if it is overwhelmed by other evidence or if it constitutes a mere conclusion. *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir. 1989).

The issue in this case is whether Plaintiff is "disabled" and therefore qualified for benefits under Title XVI of the Social Security Act. A sequential five-step analysis applies in determining whether an adult claimant is disabled. *See Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988); 20 C.F.R. § 416.920. First, the question is whether the claimant is engaged in substantial gainful activity. *Williams,* 844 F.2d at 750. If so, the claimant is not disabled; if not, the analysis proceeds to step two. *Id.* At the second step, the question is whether the claimant has an impairment or combination of impairments that is severe. *Id.* If not, the claimant is not disabled; however, if the claimant makes the required showing of severity, the analysis proceeds to step three. *Id.* at 750-51. At step three, the question is whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed at Appendix 1, Subpart P, of 20 C.F.R. Part 404 ("Listings" or "Listed Impairment"). *Id.* at 751. If so, the impairment is considered to be presumptively disabling and the claimant is entitled to benefits. *Id.* If not, the analysis proceeds to step four, where the question is whether the impairment prevents the claimant from doing past work. *Id.* The claimant is not disabled if he or she can perform past work. *Id.* If the claimant cannot perform past work, the analysis proceeds to step five. *Id.* At step five, the burden shifts to the Commissioner to establish that the claimant has the residual functional capacity ("RFC") "to perform other work in the national economy in view of his age, education and work experience." *Id.* (quoting *Bowen v. Yuckert,* 482 U.S. 137, 142 (1987)). The claimant is entitled to benefits unless the Commissioner establishes that

the claimant can "perform an alternative work activity and that this specific type of job exists in the national economy." *Id.* (quoting *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984)).

### III.  Summary of the ALJ's Decision

The ALJ found at step one of the sequential analysis that Plaintiff had not engaged in substantial gainful activity during the relevant time period. **Tr. 10.** The ALJ made no explicit step two finding that Plaintiff has an impairment or combination or impairments that is severe. Nevertheless, the ALJ proceeded to step three, where he concluded that Plaintiff did not have an impairment that met or equaled any of the Listings. **Tr. 10.** The ALJ found at step four that Plaintiff had not been able to perform her past relevant work during the period under review. **Tr. 12.** At step five, the ALJ relied upon the Medical-Vocational Guidelines ("grids") to find that Plaintiff was not disabled given her age, education, work experience and residual functional capacity. **Tr. 12-13.**

### IV.  Discussion

Plaintiff contends that the ALJ erred at steps four and five of the sequential analysis when he 1) failed to consider the combined effect of Plaintiff's impairments in assessing Plaintiff's RFC, 2) assessed Plaintiff's credibility, 3) relied on the grids to find that Plaintiff is not disabled, and 4) failed to obtain the testimony of a vocational expert to establish the existence of jobs Plaintiff can perform that exist in significant numbers in the national economy. I will address each contention in turn.

#### A.  Asserted Errors At Step Four

Step four of the sequential five-step analysis is comprised of three phases. *Winfrey v. Chater,* 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ must assess the claimant's physical and mental RFC. *Id.* Second, the ALJ must "determine the physical and mental demands of Plaintiff's past relevant work," and third, the ALJ must determine "whether the claimant has the ability to meet the

job demands found in phase two despite the mental and/or physical limitations found in phase one." *Id.* Since the ALJ found that Plaintiff has been unable to perform her past relevant work during the period under review, **Tr. 12,** Plaintiff does not dispute the second or third phases of step four. Plaintiff does, however, take issue with the ALJ's assessment of her RFC at phase one.

### 1. Did The ALJ Err When He Failed To Consider The Combined Effect Of Plaintiff's Impairments In Assessing Plaintiff's RFC?

An RFC assessment, which provides a measurement of what a claimant can still do despite the limitations caused by his or her impairments, 20 C.F.R. § 416.945(a), is used to determine whether a claimant can still do past work or any other work at steps four and five of the sequential analysis. *See* 20 C.F.R. § 416.920(e), (f). The Commissioner must "consider the limiting effects of all [of the claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity." 20 C.F.R. § 416.945(e). The ALJ in this case concluded that Plaintiff has the RFC to perform light work, **Tr. 11,** which is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b). Plaintiff contends that the ALJ erred by failing to consider all of her impairments in combination when he assessed her RFC. More specifically, Plaintiff contends that the ALJ erred in that he failed to analyze the combined effect of her allegedly disabling conditions, which include rheumatoid arthritis, chronic back pain, carpal tunnel syndrome, knee injuries, and depression.

I disagree, and find instead that the ALJ provided an adequate analysis of the limiting effects of all of Plaintiff's asserted impairments.

In his analysis of the effects of rheumatoid arthritis and carpal tunnel syndrome on Plaintiff's functioning, the ALJ observed that a consultative examination conducted by Dr. Anthony Reeve on January 16, 2001 found "full ranges of motion of the claimant's wrists and hands, without evidence of limitation of hand function."  **Tr. 11** (referring to **Tr. 145**).  The ALJ also noted that Dr. Reeve found "no contracture formation, and no evidence of rheumatoid arthritis.  The claimant had full motor power of her upper extremities."  **Tr. 11** (referring to **Tr. 145**).  The ALJ further noted that Dr. Reeve "did not recommend any restrictions on the use of [claimant's] upper extremities, and he gave his opinion that she was able to perform light work."  **Tr. 11** (citing **Tr. 146**).  Plaintiff points to no evidence to refute these findings.

With regard to the effect of Plaintiff's chronic back pain on her functioning, the ALJ observed that Plaintiff had not sought medical treatment for her back condition since 1983.  **Tr. 12.**  Accordingly, the consultative examination performed by Dr. Reeve comprised the only objective evidence in the record relating to the limiting effects of Plaintiff's back pain.  **Tr. 12.**  Dr. Reeve found that Plaintiff demonstrated "full ranges of back motions, and . . . found no abnormalities with reference to her back."  **Tr. 12** (citing **Tr. 145**).  The ALJ also noted that Dr. Reeve "stated that the claimant was able bodied and could perform light work eight hours a day on a regular basis."  **Tr. 12** (citing **Tr. 146**).  Plaintiff points to no evidence to refute these findings.

Plaintiff testified at the hearing before the ALJ that she had injured both knees.  She stated that she injured her right knee when she fell in September 1998.  **Tr. 34.**  A radiology report generated as a result of the 1998 injury to Plaintiff's right knee indicated "no evidence of fracture,

6

dislocation, radio opaque foreign body or joint effusion." **Tr. 103.** Plaintiff also testified at the hearing that she had fractured her left knee in an automobile accident in May 2000. **Tr. 32-34.** However, no medical records or other objective evidence exists in the record to corroborate this claim, and Plaintiff does not identify any relevant evidence or even mention her left knee fracture in the brief she submitted to the Court. Accordingly, the consultative examination performed by Dr. Reeve on January 16, 2001 comprises the only objective medical evidence in the record that addresses the functional limitations that resulted from Plaintiff's knee injuries during the period under review. The ALJ wrote that Dr. Reeve "found full ranges of motion of all lower extremity joints, without crepitus or muscle wasting. There was no joint deformity or any other abnormality. The claimant walked normally. The doctor did not recommend any restrictions on the claimant's abilities for standing and walking, and he gave his opinion that she was able to perform light work." **Tr. 12** (citing **Tr. 145-146**). Plaintiff points to no evidence to refute these findings.

      The ALJ also concluded that Plaintiff had not met her burden of demonstrating that "she has experienced more than a minimal impact on her capacities for work related functioning due to depression . . . ." **Tr. 10.** In support of this finding, the ALJ noted that the record contained no indication that Plaintiff ever sought treatment for any mental condition, and no doctor had ever recommended that she be evaluated for a mental condition. **Tr. 10.** The ALJ also relied upon a Psychiatric Review Technique ("PRT") form completed by Leroy Gabaldon, Ph.D. **Tr. 125-134.** Dr. Gabaldon's assessment included possible depression, **Tr. 129,** but he opined that as a result Plaintiff suffered only slight restrictions on her activities of daily living, slight difficulties in maintaining social functioning, and slight deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner, **Tr. 133.** I note that the PRT form and the lack of

objective medical evidence supporting Plaintiff's claim of depression provide a sufficient basis for a finding that Plaintiff does not suffer from a severe mental impairment. *See Hawkins v. Chater,* 113 F.3d 1162, 1165 (10th Cir. 1997). Once again, Plaintiff points to no evidence to refute these findings.

After addressing the functional limitations that resulted from each of Plaintiff's asserted impairments, the ALJ concluded that Plaintiff retains the RFC for light work. As discussed above, the ALJ found that the objective medical evidence in the record shows virtually no limitations on Plaintiff's physical functioning, and only slight limitations resulting from Plaintiff's asserted mental condition. Moreover, the ALJ pointed out that a consulting physician concluded that Plaintiff retains the capacity to perform light work, and this conclusion is not inconsistent with any opinion by a treating physician or any other evidence. **Tr. 11.** Plaintiff has pointed to no evidence that would refute any of the foregoing findings, but instead simply asserts that the ALJ erred by failing to consider her impairments in combination. However, in these circumstances I fail to see how consideration of the combined effect of Plaintiff's impairments would give rise to a finding that Plaintiff has an RFC for anything less than light duty work, and Plaintiff articulates no reason why it would. Because the evidence supports only slight limitations on Plaintiff's functioning, I find that the ALJ's RFC assessment is supported by substantial evidence.

### 2. Did The ALJ Err In Assessing Plaintiff's Credibility?

In his assessment of Plaintiff's RFC, the ALJ also concluded that Plaintiff's "reports and testimony of symptoms and functional restrictions was not supported by the evidence, and therefore lacked credibility." **Tr. 10.** Plaintiff apparently contends that the ALJ erred when he failed to find her complaints of pain credible.

A claimant's subjective allegation of pain, in and of itself, is not sufficient to establish

disability. *E.g., Thompson v. Sullivan,* 987 F.2d 1482, 1488 (10th Cir. 1993). Rather, "[b]efore the ALJ need even consider any subjective evidence of pain, the claimant must prove by objective medical evidence the existence of a pain-producing impairment . . . that could reasonably be expected to produce the alleged disabling pain." *Id.* (citing *Luna v. Bowen,* 834 F.2d 161, 163 (10th Cir. 1987)). Plaintiff alleges that she suffers several conditions that can reasonably be expected to cause pain, including rheumatoid arthritis, carpal tunnel syndrome, a knee contusion, and chronic back pain. The first question, therefore, is whether Plaintiff has proved the existence of any of these conditions by objective medical evidence.

I have found no evidence in the record that indicates that Plaintiff was actually diagnosed with rheumatoid arthritis or carpal tunnel syndrome. A report from the University of New Mexico Rheumatology Clinic dated April 7, 1998 contains impressions of probable rheumatoid arthritis and carpal tunnel syndrome involving Plaintiff's right wrist. **Tr. 117.** However, I can find no other records of medical testing that would confirm that Plaintiff had either condition. When Dr. Anthony Reeve conducted a consultative examination on January 16, 2001, he found no evidence of rheumatoid arthritis, **Tr. 145,** and apparently did not find any evidence that Plaintiff might have carpal tunnel syndrome, *see* **Tr. 143-148.** Furthermore, a rheumatoid factor test for rheumatoid arthritis performed in December 2000 was negative. **Tr. 149-150.**

Objective medical evidence relating to Plaintiff's knee injuries is similarly equivocal. The fact that Plaintiff suffered a right knee contusion as a result of a fall in September 1998 is documented in the record. **Tr. 102-105.** However, a radiology report generated as a result of that injury indicated "no evidence of fracture, dislocation, radio opaque foreign body or joint effusion." **Tr. 103.** Additionally, Plaintiff's treating physician wrote on November 18, 1998 that her ability to work

would be limited for "the next 2-4 weeks," **Tr. 105,** and did not indicate that Plaintiff would suffer any lasting pain or disability as a result of her right knee contusion. Curiously, although Plaintiff testified at the hearing before the ALJ that she suffered a fractured left knee as a result of an accident in May 2000, I have found no medical records to substantiate that injury, and Plaintiff does not mention her left knee fracture in the Memorandum Brief she submitted to the Court. Moreover, when Dr. Reeve examined Plaintiff in January 2001, he found no abnormalities in Plaintiff's lower extremities. **Tr. 145.**

With respect to Plaintiff's complaints of back pain, Plaintiff's medical records indicate that she complained of lower back pain in June 1983, **Tr. 139-141,** and December 1998, **Tr. 104.** However, I can find no medical reason established in the record for Plaintiff's complaints of back pain. Indeed, x-rays taken of Plaintiff's back in 1983 when Plaintiff complained of severe back pain were normal. **Tr. 139.**

Objective evidence has been defined as "any evidence, whether physiological or psychological, that can be discovered and substantiated by external testing." *Thompson v. Sullivan,* 987 F.2d 1482, 1488-89 (10th Cir. 1993). I have found no record of external testing that confirms the existence of Plaintiff's alleged pain producing impairments of rheumatoid arthritis, carpal tunnel syndrome, left knee fracture, or chronic back pain. I also find no evidence that Plaintiff's right knee contusion could have been expected to cause pain lasting more than a few weeks, or months, at most. However, the Tenth Circuit Court of Appeals has stated:

> [A] medical finding of disability is not based solely on objective test results. It includes an evaluation of a patient's medical history and the physician's observations of the patient, and necessarily involves an evaluation of the credibility of the patient's subjective complaints of pain. A medical opinion based on all of these factors is medical evidence supporting a claim of disabling pain, even if the objective test

10

results, taken alone, do not fully substantiate the claim.

*Nieto v. Heckler,* 750 F.2d 59, 61-62 (10th Cir. 1984). As I have noted, a physician at the University of New Mexico Rheumatology Clinic saw Plaintiff on April 7, 1998, and his report contains impressions of probable rheumatoid arthritis and carpal tunnel syndrome involving Plaintiff's right wrist. **Tr. 117.** Dr. Anthony Reeve apparently disagreed with these impressions, as he found no evidence of either rheumatoid arthritis or carpal tunnel syndrome. **Tr. 143-148.** However, Dr. Reeve's impressions included probable osteoarthritis. **Tr. 146.** Because physicians who evaluated Plaintiff expressed medical opinions that Plaintiff might have rheumatoid arthritis, carpal tunnel syndrome, and osteoarthritis, I will assume for purposes of argument that Plaintiff has shown by objective medical evidence that she may have an impairment that could reasonably be expected to produce some pain despite the lack of objective test results that would confirm these conditions.

Where a claimant has established by objective medical evidence that she has an impairment that could reasonably be expected to produce her allegedly disabling pain, an ALJ must consider all of the evidence to decide whether he believes the claimant's allegations about the functional limitations that result from the pain. *See* 20 C.F.R. § 416.929; *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995). The ALJ in this case found that Plaintiff's pain testimony lacked credibility because, in addition to the lack of medical tests that might confirm a diagnosis of a pain-producing impairment and the consultative examiner's findings, which indicate that Plaintiff suffers few, if any, limitations on her physical functioning, Plaintiff has a history of engaging in drug seeking behavior. The ALJ observed that while Plaintiff's doctors treated her for her complaints of pain, they noted at the same time that she has abused prescription opiates. **Tr. 10.** Evidence in the record indicates that Plaintiff has tried to obtain pain medications by submitting prescriptions from different doctors for the same

drug during the same time period, and by using forged prescriptions.  **Tr. 123-124**.  The ALJ also cited several examples of inconsistencies in Plaintiff's testimony that led him to conclude that Plaintiff had been "less than fully candid regarding her use of intravenous drugs during the period under review." **Tr. 10-11.**  After discussing the evidence that supported these findings, the ALJ concluded that Plaintiff's drug-seeking behavior "strongly suggests to me that her complaints of pain may be motivated for reasons other than treatment." **Tr. 11.**  Plaintiff contends that the ALJ failed to apply proper legal standards when he assessed her credibility in the following ways.

Plaintiff's first contention is apparently that the ALJ erred by relying upon incompetent evidence when he found that Plaintiff was less than fully candid about her use of intravenous drugs and that she misrepresented her drug use.  In his analysis, the ALJ noted that Plaintiff denied abusing drugs, alcohol, and cigarettes in April 1998.  **Tr. 10** (citing **Tr. 116**). The ALJ found that this statement was "less than fully candid" and constituted a misrepresentation of Plaintiff's IV drug use for several reasons, including the fact that a consultative physician noted in January 2001 that Plaintiff had "multiple track lines, consistent with IV drug use." **Tr. 10** (citing **Tr. 145**).  According to Plaintiff, the ALJ had to assume that these track lines were recent in order to find that Plaintiff was untruthful when she denied abusing drugs in April 1998.  However, because the consultative physician did not relate the track lines to a particular time period, Plaintiff contends the ALJ could not properly have relied upon this evidence.  Nevertheless, even if the ALJ erred in relying upon the consultative physician's observation of track lines, I find that other evidence supports the ALJ's determination that Plaintiff misrepresented her intravenous drug abuse.  Although Plaintiff denied abusing drugs in April 1998, **Tr. 116,** she testified at the hearing before the ALJ that she used IV drugs until October 1998, **Tr. 39.**  In another contradictory statement, Plaintiff reported in January 2001 that she had "quit

12

utilizing IV drugs in 1991." **Tr. 145.** Since the ALJ's determination that Plaintiff misrepresented her drug abuse is supported by other evidence in the record, I find that his reliance on Dr. Reeve's observation of track lines constitutes harmless error.

Plaintiff also appears to attack the ALJ's determination that her pain testimony lacked credibility by arguing that this finding is inconsistent with his findings that she was not engaged in substantial gainful activity and was not able to perform her past relevant work during the period under review. However, the fact that Plaintiff had not engaged in substantial gainful activity during the period under review is not necessarily inconsistent with a finding that Plaintiff's pain testimony lacked credibility, for Plaintiff could have been unemployed for a variety of reasons that had nothing do to with her alleged physical pain. Moreover, even if a finding that Plaintiff was unable to perform her past relevant work is arguably inconsistent with a finding that her pain testimony lacked credibility, that inconsistency would not necessarily mean that the ALJ erred when he found that Plaintiff's pain testimony lacked credibility. Rather, it is equally plausible that the findings are inconsistent because the ALJ should have found that Plaintiff *could* perform her past relevant work. As I have noted above, objective medical evidence in the record shows virtually no limitations on Plaintiff's physical functioning, and only slight limitations resulting from Plaintiff's asserted mental condition. Given these slight limitations, it would arguably have been more consistent with the evidence for the ALJ to find that Plaintiff, whom the consultative physician described as an "able bodied individual," **Tr. 146,** could perform her past relevant work. I therefore find that Plaintiff's argument about inconsistent findings does not provide sufficient reason to reverse the ALJ's credibility determination.

Plaintiff's only other step four argument is that the ALJ should have considered the fact that she had been treated for a variety of confirmed medical conditions, and was prescribed Valium,

13

Demerol, Ibuprofen, Naprosyn, Darvon, Flexeril, Plaquenil and Amitriptyline during the relevant time periods.  According to Plaintiff, since the medical professionals who prescribed these drugs must have felt her complaints of pain were credible, the ALJ should likewise have found her complaints credible.  As I have discussed above, however, the evidence in the record does not clearly support a finding that Plaintiff was treated for any "confirmed" pain-producing medical condition other than her right knee contusion, which the evidence indicates has resolved.  Moreover, Plaintiff does not dispute the ALJ's determination that she has a history of engaging in drug seeking behavior.  Particularly in these circumstances, the fact that some medical providers found Plaintiff's complaints credible does not mandate a conclusion that the ALJ should likewise have found her complaints credible.  Rather, the fact that Plaintiff has a history of engaging in drug seeking behavior arguably suggests that at least some of the medical professionals who prescribed pain medications to Plaintiff should *not* have found her complaints credible.  Accordingly, I do not find that the ALJ erred simply because some medical providers may have found her complaints of pain credible.

For the foregoing reasons, I find no error in the ALJ's assessment of Plaintiff's credibility.

### B.  Asserted Errors At Step Five

At step five of the sequential analysis, the Commissioner bears the burden of establishing that the claimant has the RFC "to perform other work in the national economy in view of his age, education and work experience." *Williams v. Bowen,* 844 F.2d 748, 751 (10th Cir. 1988) (quoting *Bowen v. Yuckert,* 482 U.S. 137, 142 (1987)).  Plaintiff contends that the ALJ erred at step five when he mechanically applied the Medical-Vocational Guidelines, or grids, to determine that she was disabled.  Plaintiff also contends that the ALJ erred when he failed to obtain the testimony of a vocational expert ("VE") to establish the existence of jobs Plaintiff could perform that exist in

14

significant numbers in the national economy.

### 1.  Did The ALJ Err When He Relied Upon
### The Grids To Find That Plaintiff Is Not Disabled?

The grids were created to assist the Commissioner in determining whether a claimant has the RFC to perform other work in the national economy at step five of the sequential analysis. "Through the grids, the [Commissioner] has taken administrative notice of the number of jobs that exist in the national economy at the various functional levels . . . ." *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984). The grids are utilized, in appropriate cases, as follows. After placing the claimant in a particular RFC category such as sedentary, light, medium, heavy or very heavy work, *see* 20 C.F.R. § 416.967, the adjudicator may turn to the grids to "direct a conclusion as to whether the claimant is or is not disabled, depending on the claimant's characteristics . . . ." *Williams v. Bowen,* 844 F.2d 748, 752 (10th Cir. 1988). In many cases, the Commissioner can meet her burden of proving that jobs the claimant is able to do exist in significant numbers in the national economy by relying on the grids. *Channel,* 747 F.2d at 579. There are, however, instances in which the grids cannot be applied. For example, since the grids only consider exertional or strength based limitations, the grids may not be applicable where the claimant has nonexertional impairments. *Id.* at 580. Plaintiff asserts that she suffers pain resulting from rheumatoid arthritis, carpal tunnel syndrome, a knee contusion, and chronic back pain, and that her pain, as a nonexertional limitation, barred mechanical application of the grids in this case. However, the mere presence of a nonexertional limitation such as pain does not automatically preclude reliance on the grids. *E.g., Gossett v. Bowen,* 862 F.2d 802, 807-08 (10th Cir. 1988). "The presence of nonexertional impairments precludes reliance on the grids only to the extent that such impairments limit the range of jobs available to the claimant." *Id.*  In other words,

"the grids cannot be applied conclusively if the claimant has nonexertional limitations that significantly limit his ability to perform the full range of work in a particular RFC category on a sustained basis." *Williams,* 844 F.2d at 752 (internal quotations omitted). Plaintiff contends that the ALJ erred when he applied the grids because she suffers from pain that significantly alters her capacity to work.

The ALJ in this case specifically found that Plaintiff retained the RFC to perform light work activities, and that "[n]onexertional factors have not significantly eroded this work capacity." **Tr. 11.** In his decision, the ALJ considered Plaintiff's medical records relating to her asserted pain-producing impairments, a report by Dr. Anthony Reeve, who performed a consultative examination at the request of the Administration, and Plaintiff's own testimony. As I have previously noted, the ALJ found that Plaintiff's testimony regarding her symptoms and functional restrictions lacked credibility based upon the fact that no medical tests confirmed a diagnosis of any pain-producing impairment, the consultative examiner's findings, which indicate that Plaintiff suffers few, if any, limitations on her physical functioning, and Plaintiff's history of engaging in drug seeking behavior. For the following reasons, I find that the ALJ's determination that Plaintiff does not suffer from any nonexertional impairment that significantly eroded her work capacity is supported by substantial evidence. As such, the ALJ properly applied the grids to find that Plaintiff is not disabled.

The facts in this case parallel those presented in *Gossett v. Bowen,* 862 F.2d 802 (10th Cir. 1988). In *Gossett,* there was no dispute that plaintiff suffered pain due to arthritis that resulted from earlier physical injuries. Nevertheless, the Court of Appeals for the Tenth Circuit found that the ALJ properly applied the grids because the evidence supported a finding that the plaintiff did not have a nonexertional impairment serious enough to limit the range of jobs available to him. *Id.* at 807-08. The appellate court upheld the ALJ's determination that plaintiff did not have such a serious

16

nonexertional impairment for reasons that included the following. First, the ALJ found that the plaintiff's testimony was not credible. *Id.* Second, despite the plaintiff's complaints of pain, one of his treating physicians found that he demonstrated "a satisfactory range of movement for the joints in question." *Id.* Third, the ALJ relied upon the plaintiff's daily activities as support for a finding of nondisability. *Id.* Fourth, two of plaintiff's treating physicians expressed the opinions that the plaintiff could return to work. *Id.* In view of these findings, the appellate court concluded that the ALJ's determination that the plaintiff did not have a nonexertional impairment serious enough to limit the range of jobs available to him was supported by substantial evidence. *Id.* at 808.

In this case, the ALJ found that Plaintiff's testimony regarding her symptoms and functional limitations lacked credibility, and I have found no error in the ALJ's credibility assessment. Dr. Anthony Reeve also found a full range of motion for each of the joints in which Plaintiff complained of pain. *See* **Tr. 145.** Additionally, Dr. Reeve described Plaintiff as an "able bodied individual," and expressed the opinion that she could work eight hours per day, with no lifting greater than twenty pounds, in a light duty category. **Tr. 146.** Although Dr. Reeve was a consultative rather than treating doctor, I have found no evidence in the record that any of Plaintiff's treating doctors expressed a contrary opinion. This case is also distinguishable from *Gossett* in that Plaintiff in this case testified that her daily activities are restricted by her pain. For example, Plaintiff testified that she cannot brush her teeth until she has been awake for a couple of hours, **Tr. 28,** she cannot brush her hair, **Tr. 29,** and she does not cook or do any household chores, **Tr. 29.** Nonetheless, the *Gossett* court stated that a claimant's daily activities are not dispositive on the issue of disability; rather, such activities may simply be considered along with other evidence in determining whether a claimant is disabled. *Gossett,* 862 F.2d at 807. After considering the entire record in this case, I find that the

17

similarities between this case and *Gossett* compel the same result. I therefore find that the ALJ's determination that Plaintiff did not have a nonexertional impairment serious enough to limit the range of jobs available to her was supported by substantial evidence. As such, the ALJ properly relied upon the grids in finding that Plaintiff was not disabled during the period under review.

### 2.  Did The ALJ Err When He Failed To Obtain The Testimony Of A Vocational Expert?

Plaintiff's final contention is that the ALJ was required to obtain the testimony of a vocational expert ("VE") to establish that she could perform "other work" that exists in significant numbers in the regional and national economies. This contention appears to be premised upon Plaintiff's assertion that the ALJ erred when he applied the grids. However, I have found that the ALJ properly applied the grids because his finding that Plaintiff did not have a nonexertional impairment serious enough to limit the range of jobs available to her was supported by substantial evidence. In these circumstances, vocational expert testimony was not required. *See Woods v. Shalala,* 39 F.3d 1193 (10th Cir. 1994).[1]

### V.  Summary and Conclusion

In sum, I find that the ALJ properly considered the limiting effects of all of Plaintiff's impairments, and that his RFC assessment was supported by substantial evidence. I further find that Plaintiff has failed to show that the ALJ applied incorrect legal standards when he assessed her credibility. Finally, I find that the ALJ's determination that Plaintiff did not have a nonexertional impairment serious enough to limit the range of jobs available to her was supported by substantial evidence. As such, the ALJ properly relied upon the grids in finding that Plaintiff is not disabled, and

---

[1] The case cited was reported in table format. The full text of the decision may be found at 1994 U.S. App. LEXIS 31022.

vocational expert testimony was not required to establish the existence of jobs Plaintiff can perform that are available in significant numbers in the national economy.

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Reverse and/or Remand for a Rehearing filed on January 23, 2003 **[docket # 14]** is **DENIED.**

**IT IS FURTHER ORDERED** that judgment shall be entered in favor of the Defendant, and this matter shall be dismissed with prejudice.

_____
**W. DANIEL SCHNEIDER**
**UNITED STATES MAGISTRATE JUDGE**